IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FUEL SERVICE MART, INC., a Missouri Corporation, | ) ) ) | |
| Plaintiff, | ) ) ) ) | |
| v. | ) ) | No. 06 C 1080 |
| SKYLINE GROUP, LLC, an Illinois Limited Liability Company, | ) ) ) ) | Judge Coar |
| | ) | Magistrate Schenkier |
| Defendant. | ) ) | |

## SKYLINE GROUP LLC'S MOTION FOR JUDGMENT
## PURSUANT TO THE SETTLEMENT AGREEMENT

Now Comes the Defendant, Skyline Group, LLC, (hereinafter "Skyline"), by and through its attorneys, Sullivan Hincks & Conway, and for its Motion for Judgment in its favor and against Plaintiff pursuant to the terms of the Settlement Agreement, states as follows:

1. After a lengthy process and with the Court's involvement, the parties resolved the issues in this lawsuit pursuant to a written agreement signed by both parties entitled "Settlement Agreement And Mutual Releases" (the "Settlement Agreement"), a copy of which is attached hereto as Exhibit 1. The effective date of the Settlement Agreement is December 20, 2007, the date that the Settlement Agreement was signed by the Plaintiff, Fuel Service Mart, Inc. ("FSM"). Skyline signed the Settlement Agreement on December 12, 2007.

2. Pursuant to the Settlement Agreement FSM chose David Hautatian from Hopkins Appraisal as its appraiser. Skyline chose Dale Kleszynski as its appraiser. The two appraisers selected a third appraiser, John Mundie. These appraisers were chosen pursuant to Article 1 of the Settlement Agreement.

3. On or about January 25, 2008, FSM advised that Mr. Hautatian completed his appraisal. He valued the Property at $2,120,000.

4. On February 29, 2008, Mr. Kleszynski completed his appraisal. A copy of his appraisal was submitted to FSM's counsel via e-mail. He valued the Property at $3,100,000.

5. On February 26, 2008, Mr. Mundie completed his appraisal. A copy of his appraisal was supplied to FSM's counsel via e-mail. He valued the Property at $3,025,000.[1]

6. By March 3, 2008, FSM and its counsel were in possession of all three appraisals. FSM did not indicate that there were any issues with any of the appraisals.

7. At a status hearing before this Court on March 6, 2008, FSM through its counsel appeared in Court. At the Court status hearing FSM voiced no concerns or problems with any of the appraisals.

8. Skyline was billed $3,800 by Mr. Kleszynski for his services and appraisal. Mr. Mundie billed $4,000 and pursuant to the Settlement Agreement this amount is to be equally shared by the parties.

9. After the three appraisals were completed, again pursuant to the Settlement Agreement, and without any prior indication of any purported problems with the appraisals of either Mr. Kleszynski or Mr. Mundie, the three appraisers met on March 11, 2008 via telephone conference in order to arrive at the Fair Market Value of the Property as set forth in the Settlement Agreement. As a result of the meeting, two of the appraisers, Mr. Mundie and Mr. Kleszynski, were able to agree on the Fair Market Value of the Property as a going concern service station. Copies of their respective letters agreeing upon the Fair Market Value of the Property at $3,050,000 are attached hereto as Exhibit 2. Pursuant to Paragraphs 1.0(c) and 1.0(d)

---

[1] As the Court has already been provided with the complete text of all three appraisals, in the spirit of saving our environment Skyline will attach only the pertinent provisions of the three appraisals.

2

of the Settlement Agreement, the decision of any two of the three appraisers "shall be binding upon the third appraiser" and shall be the Fair Market Value ("FMV").

10. Pursuant to the decision of FMV as concluded by the agreement of the two appraisers pursuant to the Settlement Agreement, on March 20, 2008, Skyline advised FSM that it was ready, willing and able to close the transaction and sell the Property to FSM in exchange for the payment of $3,050,000. See Exhibit 3. As the Court is aware, however, FSM is refusing to pay Skyline $3,050,000 as indicated in FSM's Motion disingenuously titled as "Motion to Enforce the Settlement Agreement" (the "FSM Motion"). The FSM Motion was filed on March 19, 2008. Prior to the fling of the FSM Motion, as late as March 12, 2008, FSM was coordinating the closing of the transaction with Skyline without objection after having all three appraisals in its possession. (See Exhibit 4). Keep in mind that all three appraisers met on March 11, 2008. Apparently after March 12, 2008, FSM had a change of heart and is now refusing to close the deal at the FMV as determined by two appraisers. The FSM Motion is brought in bad faith and constitutes a breach of the Settlement Agreement. As such, pursuant to paragraph 6I of the Settlement Agreement, Skyline requests an award of its attorneys' fees and costs in having to bring the instant motion.

11. Attached hereto as Exhibit 5 are pertinent excerpts from Mr. Kleszynski's appraisal. Mr. Kleszynski's appraisal concluded that the "market value of the fee simple interest of the subject property" was $3,100,000. Mr. Kleszynski's appraisal value was based upon the Direct Sales Comparison Approach to Value and further stated that "a history of the past operation of the property was provided and reviewed. This information, photocopied in the addenda of the report, was considered in formulating the final value conclusion." The information referred to by Mr. Kleszynski's was the sales information for the property provided

by Skyline. This same information was provided to all appraisers and is included in Exhibit 2 attached hereto. Mr. Kleszynski's appraisal was of the Property as a going concern. (See Exhibits 5 and 2). Mr. Kleszynski appraisal noted that the Property he appraised was a "unique combination of business, equipment and FF & E. Mr. Kleszynski concluded that the "current fuel sales and convenience store application is the Highest and Best Use of the subject property, as improved." Mr. Kleszynski is an MAI certified appraiser licensed in the State of Illinois and has been an appraiser in this area for over 25 years.

12. Attached hereto as Exhibit 6 are pertinent excerpts from Mr. Mundie's appraisal. Mr. Mundie's appraisal concluded that the "as-is fee simple Market Value of the subject property, ***inclusive of associated business value***" (emphasis added) was $3,025,000. Mr. Mundie's appraisal value was based upon the "Sales Comparison Approach" and further stated that in determining the Market Value of $3,035,000 he considered the "recent historical sales volumes pertaining to both the convenience store and the gasoline operation. These volumes are indicative of an economically viable operation." Mr. Mundie's appraisal was of the Property as a going concern. (See Exhibits 6 and 2). Mr. Mundie identified the Property as including the land, building, and "service station with mini-mart, car wash, and 6 pump islands with 16 fueling positions." Mr. Mundie is an MAI certified appraiser licensed in the State of Illinois and has been an appraiser in this area since 1982.

13. Attached hereto as Exhibit 7 are pertinent excerpts from Mr. Hautatian's appraisal (Mr. Hautatian did not sign any appraisal however and it is entirely unclear whether he in fact issued an appraisal). Mr. Hautatian's appraisal concluded that the "market value of the fee simple estate of the above referenced property" was $2,120,000. Mr. Hautatian's appraisal value was based upon the "Sales Comparison Approach" and further stated that the value was based in

4

part upon "[t]he subject's historical financial data." Mr. Hautatian's qualifications were not attached to the appraisal and it does not appear that he signed the appraisal. The Settlement Agreement required that the selected appraiser be an MAI certified appraiser with at least 5 years experience valuing commercial properties in the area where the subject property is located. (See Exhibit 1, page 2, Article 1). It does not appear that FSM met this requirement.

14. All three appraisals used the Direct Sales Comparison Approach. All three appraisals considered the income figures and gasoline gallonage figures supplied by Skyline. The letters from Mr. Mundie and Mr. Kleszynski indicate that their appraisals were for the Property as a going concern. All three appraisals valued the "fee simple title" interest of the Property and all three indicated that the highest and best use was as a gas station with convenience store and car wash. Skyline has fully complied with the Settlement Agreement.

15. The FSM Appraisal, purportedly prepared by Mr. Hautatian is significant for many reasons, and the reliability of this appraisal is highly questionable.

a. First, although FSM selected Dale Hautatian as their appraiser, his name does not appear anywhere in the report. He did not sign the report and his resume is not attached to the report.

b. The same Hopkins Appraisal company that Mr. Hautatian works for now prepared an appraisal of the Property back in 2004 and concluded that the value of the Property in January of 2004 was $2,200,000. (See Exhibit "8"). It defies logic and common sense to believe that the value of the Property actually dropped from this first appraisal provided almost four years ago.

c. Skyline purchased the Property in January of 2005 for $2,680,000 in arms length transaction. It defies logic and common sense to believe that the value of the Property actually dropped by over 20% from this arms length transaction.

d. An independent appraisal of the same Property prepared by yet another Illinois licensed appraiser completed in January of 2008 for use in an eminent domain proceeding concluded that the fair market value of the Property (inclusive of the property to be taken by IDOT) was $3,050,000. He concluded that the value of the property to be taken by IDOT to be $80,000. For purposes of the quick take hearing the parties in that litigation agreed that the preliminary just compensation would be $69,000) (See Exhibit 9).

e. Mr. Hautatian never visited the Property or inspected the Property. No FSM appraiser ever visited the Property (See page 4, last bullet point under "Certification"). Mr. Hautatian's name does not even appear on the certification page, or anywhere else in the report.

f. Mr. Hautatian's resume is not attached to the report. Rather the resume of Ann Porter is attached to the report. Mr. Hautatian was selected by FSM to be their appraiser, not Ann Porter. Moreover, Ms. Porter is not a licensed appraiser in the State of Illinois as admitted in her resume attached to the report. There is no indication what particular function Martin Korb serves, and he was alleged to have visited the site, but Skyline never saw this person at the site nor was ever introduced to any personnel of any FSM appraisal company. Mr. Korb's qualifications are not provided and his resume is not attached to the report.

g. The appraisal submitted by FSM as Exhibit B to their motion to enforce the settlement is not signed.

h. Page 10 of the Appraisal under History of the Property indicates that some unidentified appraiser from Hopkins Appraisal obtained information on the Property through "conversation's with the owner's representatives." This statement is false. Skyline never had any conversations with any appraiser from Hopkins or any other person from Hopkins.

i. Under Competency of the Appraiser at page 10 of the FSM Appraisal, Mr.

Hautatian is not identified, and in fact no appraiser is identified.

j.  Under Identification of the Appraisal Problem, the intended use of the report is not correctly identified, as it says the report is to be used by FSM "in proper underwriting, loan classification, and/or asset disposition." None of these purposes are at issue in the instant matter.

k.  At page 11 of the FSM Appraisal, there is a section labeled, "Extent of property inspection" wherein the report states that "[t]he appraisers performed an on-site inspection of the subject property." This is not true as the report certifies that the appraisers did NOT visit the site (See page 4). The similar statements made under "Type and extent of data research" are likewise false.

l.  At page 17 of the FSM Appraisal Report there is a faulty premise in that the section labeled "Competitive Properties" indicates the price for gas is $2.89 "well below the competition..." The price provided in this example was actually a reduced price if the customer also purchased a car wash at the same time. This price was not indicative of the price of gas without a car wash. Had the appraisal considered the actual price, then this price would in turn effect the so-called profit margins employed by the purported appraiser, whoever that may be.

m.  At page 22 of the FSM Appraisal, the car wash facility is incorrectly identified which leads one to wonder whether FSM's appraiser was looking at the right property. The car wash is not a "brush type" as indicated at Page 22 of the FSM appraisal. Rather, it is a laser, touch-free type car wash. The equipment is not 8 years old as indicated. Rather Skyline spent in excess of $200,000 on new equipment and is only 2 years old. The FSM appraisal likely took the old information from the 2004 appraisal rather than doing an actual appraisal of the actual property. This presumption is also supported by the FSM Appraisal Report at page 22 where it indicates only 1 auto vacuum where actually there are two. Skyline put in two new ones just 2

7

years ago. The FSM appraisal is a cut and paste job.

  n. Page 29 of the FSM Appraisal is significant for the fact that the comparable sales that were considered did not include a single gas station property as a comparable sale.

  o. At page 37, there is no indication in the appraisal as to where the so-called comparable properties were located, and it is not known whether these so-called comparable sales were gasoline stations. Given the other deficiencies in verifying other basic information of the subject property, it is also highly suspect whether the FSM appraiser verified the underlying data of the comparable sales. The underlying data was not attached to the report.

  p. Page 40, the appraiser used a faulty assumption for car wash sales as it relied upon the old information ("retained knowledge from prior years") from the old appraisal as indicated above and did not consider the installation of a brand new car wash. The information provided by Skyline indicates that carwash sales are actually $15,000 rather than the $10,000 per month used by the FSM Appraiser.

  15. All three appraisers used the same data provided by Skyline and all of this data was included in the appraisals of both Mr. Mundie and Mr. Kleszynski. All three appraisals valued the Property as a going concern as required in the Settlement Agreement. FSM merely takes exception to the ultimate value that the other two appraisers have developed. Skyline complied with the Settlement Agreement. The appraisal process conformed completely with the Settlement Agreement. Skyline seeks to enforce the Settlement Agreement.

  16. Skyline has incurred in excess of $5,800 in costs associated with the appraisal process ($3,800 for Mr. Kleszynski and ½ of $4,000 for Mr. Mundie).

  16. The Settlement Agreement requires that a judgment be entered in favor of Skyline in the event that FSM refuses to close the transaction pursuant to the Settlement Agreement. The

Settlement Agreement provides that Skyline is entitled to a judgment in its favor in the amount of $3,050,000, plus the amount of its attorneys' fees from December 12, 2007, plus its costs. (¶1.3, 6I).

WHEREFORE, Defendant, Skyline Group, LLC, requests that this Honorable Court enter judgment in its favor and against Fuel Service Mart, Inc. in the sum of $3,050,000, plus its costs and attorneys' fees pursuant to the Settlement Agreement, and such other relief as this Honorable Court deems just.

Dated: 3-24-08

Respectfully submitted,
Skyline Group, LLC

By: _____
One of Its Attorneys

John J. Conway
Sullivan Hincks & Conway
120 West 22nd Street
Suite 100
Oak Brook, IL 60523
(630) 573-5021